Your Honor, this case will be brought to 2-15-4080. Kim M. Westing v. Ross T. Thimesch and his public care attendant, D.C. defendant, police are being on behalf of the defendant's attendant, attorney Mr. Charles A. Cohen, are being on behalf of the defendant and police. Mr. Collins, you may begin. Mr. Cohen. Good morning. May it please the court, I'm Charles Cohen on behalf of the plaintiff, Kim Oechsle. And we're here today with regard to a situation I know this court has dealt with to some degree before involving a situation where a case has been dismissed because the plaintiff in a personal injury proceeding had failed to disclose the existence of the action in a bankruptcy chronology, which I know the court is familiar with. Well, she initially failed to disclose it, but she disclosed it later on, didn't she? She disclosed it after the suit was refiled and we discovered the mistake when defense counsel served us with the motion, we promptly went to the bankruptcy court desk to reopen it and Judge Goldberg of the bankruptcy court did allow the case to reopen. It stands at the moment reopened and nothing happening there because, well, because of what happened in the trial courts, there's nothing to deal with at the moment. So that's where it stands. The bankruptcy case where she got her discharge is reopened. And as I believe the court knows, the filing for bankruptcy occurred during the point in time when the case was dismissed. This was a non-suited and refiled action. And the case was dismissed and she then filed for personal bankruptcy and as we noted, we acknowledge she didn't disclose the existence of the non-suited case in the bankruptcy action and she filed in February of 2014 and got her discharge just three months later in May. Real quick, open and closed. It was modest. She had no reachable assets and modest amount of creditors. Just to move it along, the chronology of events is really not disputed here, is it? We know that when she initially filed, you would concede she said no, she didn't have a lawsuit pending. Yes. All right, then she amended it later. So it all ends up basically boiling down to this ruling on the judicial estoppel and whether or not it applied, I think, in essence. So what I wanted to ask you about that is in the trial court's oral ruling, it doesn't mention anything about the second part of the Seymour estoppel argument. You've got the elements, then you have a second step, as you know, in Seymour as to whether or not the court's going to then apply it with some considerations that involve the exercise of discretion. Although I noticed then in the written order, the court did say it exercised its discretion. So my point of question is, is that enough? The court must exercise discretion, according to Seymour, and the written order in the motion we consider says, yes, I did use my discretion, although it doesn't specify how it used its discretion in what factors it considered. So I take it your position is, saying we've exercised our discretion is not enough? Is that your position? That is definitely our position. And why is that your position? Well, we're essentially in the same position as the Supreme Court recognized, I think it was in which I quoted in my reply, in paragraph 50 of the Supreme Court decision. It was just like you. They said, we exercised our discretion. We find you in favor of the defendant and dismiss the action. But there was no real exercise of discretion for that matter. If you look at the first part of the sentence where the court talks about exercising discretion, the judge just says... I think the court says, in the exercise of the court's discretion, finds that it is appropriate to impose estoppel to prevent the plaintiff from taking inconsistent positions. Is that her statement? And prior to that, she further found all elements of judicial estoppel were present. Yes, that is true. That's the whole point. But there is no requirement in CMAR, is there, that requires a court to make written or oral specific findings beyond that, is there? No, it doesn't say there has to be written findings, no. But there does have to be some evidence, I believe, that discretion was authorized. And I think taking this sentence in its totality, the first part just recites the fact that the five elements were present, which we disagree with, and... But let's get past that for the moment. Right. But going on, it says, to impose estoppel, finds it appropriate to impose estoppel to prevent the plaintiff from taking inconsistent positions. That's not enough, because that basically goes through the fact that they're just all... What the Supreme Court said was that there is no presumption from the fact of a misstatement that there was an intent to deceive. There has to be something more than just the fact that this misstatement was made. There has to be an indication of an intent to deceive. Otherwise, they wouldn't have reversed. Yes. Second district. Yes. Yeah. Because they are seeking to have a more flexible, a more equitable standard than has been followed in the federal courts. But now Judge Mullen knew that when she issued her first order that the Seymour case was pending before the Supreme Court, correct? She knew, and I can't really say anything. Right. And then, at the time of the motion to reconsider, she knew it had been issued, the Supreme Court had issued its opinion, and she acknowledged that, and then made her statement that she was exercising discretion, indicating that she was doing what she believed the Supreme Court required. Isn't that correct? Well, the fact that the word discretion is there doesn't mean she actually did, because taking into totality the important parts of her own word, one, that the five elements were present, and two, that the plaintiff supposedly was taking an inconsistent position in bankruptcy court for the position that she took. And you're saying under Seymour that would not be enough, would it? Taking inconsistent positions, because that's what clearly happened in Seymour. Yes, that's right. That seems to be the point. The final clause in her sentence, it's my discretion she shouldn't be doing that, therefore you lose. And it's still the same thing. You made a misrepresentation, you lose. Okay, but, I'm sorry. The Supreme Court said specifically in Seymour, second, if all prerequisites have been established, the trial court must determine whether to apply judicial estoppel, an action requiring the exercise of discretion. Then it went on to say multiple factors may, not must, but may, inform the court's decision, among them the significance or impact of the party's action in the first proceeding, and, as noted, whether there was an intent to deceive or mislead, as opposed to the prior position having been the result of inadvertence or mistake. So, this seems to me is pretty, leaves the trial court with a wide latitude in terms of how much to say, and especially under these particular circumstances. It seems to me that, based on the language here, the Supreme Court isn't saying that the trial court has to make specific oral findings or written findings. Here, Judge Mullen indicated she knew what was in that decision and was noting that she exercised her discretion about whether to apply judicial estoppel. The discretion she seems from the totality of her sentence just comes from the fact that the inconsistent statements were made and she wanted to stop that kind of bad thing from happening. Well, let's hold in on that. Did she say that? What exactly did she say in the October 15, 2015 order? What exactly is the language? It says, the court further holds all elements of judicial estoppel are present and in the exercise of the court's discretion finds that it is appropriate to impose estoppel to prevent the plaintiff from taking inconsistent positions, period. So, the court basically said it was doing it to prevent the plaintiff from taking inconsistent positions. That was the basis for the court's ruling. Yes. Which is not consistent, though, with Seymour, is it? It is not consistent with Seymour. And why not? I mean, that was the reason she felt judicial estoppel should be applied. But that's the old standard. You make an inconsistent statement, that's all. There is no discretion. That's basically the basis of the earlier Seymour decision in cases like Burge, which clearly followed older federal court thinking, and I believe that Burge retains no viability subsequent to the Supreme Court's ruling in Seymour. When she's saying this, she's not considering those factors. The thing that's preeminent in her mind is only the fact that she didn't disclose the non-suited action in the bankruptcy court, and that's all. It doesn't consider the impact in the bankruptcy court of her non-disclosure, which we contend was nil, because this case had, and you're talking about valuation of assets, and the Supreme Court discusses valuation of assets. There is no possible way to value this asset for the benefit of those creditors in the bankruptcy court. This was a non-suited action. Even this is impending. We put note 9 in the Supreme Court's decision that the valuation of assets is hard to do and impractical, and this would be particularly so in a case that was not even pending at the time. Well, but there was a specific question that was to elicit that information. Apart from disclosure of assets, there was a question that was to elicit an answer about whether or not a case had been pending previously. Yes. So it was that question. We acknowledge that. Right, we acknowledge that. But going back for a minute, the focus on judicial estoppel is really on the litigant and also the effect on the justice system. So just because the bankruptcy case was reopened shouldn't necessarily be the end of the analysis, should it? I mean, the whole focus is, and the purpose of judicial estoppel is to, not to condone dishonesty, or not to excuse conduct that shouldn't be excused. Well, first of all, we don't believe dishonesty occurred here. Yes, misstatement definitely occurred here. She didn't disclose a cause of action that had been pending within a year prior. I think that the real gist of why that question is on these bankruptcy schedules, is while this kind of situation is within the ambit of it, it's even more so for the case that's been concluded with recovery. In this situation, her case had been concluded without recovery but with a right to refile. So what I'm saying is, yes, it definitely should have been disclosed, but the misrepresentation did not affect what ultimately happened. She has to get a benefit from the first court derived from the misrepresentation made to that court. We cannot say that she got her discharge in May of 2014 because of that statement. Had she disclosed it, there is no evidence, and the burden is upon the defendants, the burden of compliance with any 2619 motion, to show facts that would indicate the elements. By the way, is it your position that this is a de novo review and not an abuse of discretion? That was where the... I believe, yeah, it is de novo review. I would think you would lie to me. Well, one, it's a 2619 motion, and even if it's under an abuse of discretion standard, the discussion would be, I do not... I think in Seymour, when the courts say it terminates the litigation, it's de novo. I think there's some reference to that. Yeah, well, the thing is, it's an awkward situation where usually this equitable situation applying of this judicial estoppel applies to the abuse of discretion standard, but it also... Seymour was a summary judgment motion, and the case so far is a 2619 motion, and those cases usually are de novo review. But I think that's the most appropriate here because we're not even in a summary judgment motion, we're in a pleading motion, or I guess we call it a hybrid motion. Which terminates the litigation. Yeah, it terminates the litigation, and I feel de novo review is most appropriate, but even if it were abuse of discretion review, I believe it's paragraph 50 of the Supreme Court decision, talks about applying the abuse of discretion standard and says that when the law grants the court a discretion and they don't exercise the discretion granted under the law, it is abuse of discretion without more. And I believe that this was the... essentially what the Supreme Court was saying in Seymour. I believe that... I know I cited this in our reply brief as well. Counsel, your prayer asked for reversal rather than vacation and remand. The reversal asked for remand and a trial. You didn't ask for vacation and a remand or reconsideration based upon the proper parameters that are set forth in the Supreme Court decision relative to the factors that should have been applied here. The inconsistent positions are not necessarily, at least not to my knowledge, the factors that are enunciated or set forth in the Supreme Court decision. And if they aren't the factors, then this isn't necessarily a ruling on merits. This is a ruling on a procedural defect that suggests that the trial court didn't apply the correct factors or apply the wrong factor. That is, she applied inconsistent submissions, which isn't a factor that's set forth in the case. So why should we vacate it and remand it if all you did was ask to reverse it or remand it for trial? Well, reversing, I thought, I perceived was the same as vacating. So reversing, she dismissed this case on the basis of this ruling. So what they're seeking is a reversal of her decision. At least you raised the argument that it was improperly decided for a reason other than the manifest weight of the evidence. I'm sorry, I misheard. You argued that it was a wrongful decision based on something other than the manifest weight of the evidence. And... Perhaps I could refresh your recollection. You said the phrase, Didn't you say that? Yeah, I read Seymour Paragraph 50. Yeah. Okay. Catherine, do you have anything? Sir, your time is up. You'll have an opportunity for a moment. Thank you. Mr. Suleiman. Thank you. May it please the Court. Good morning. My name is Puad Suleiman. I represent Dr. Teagan Timmish and his professional corporation. It's our position that the appellant has taken inconsistent positions. Could you speak up a little louder, please? It is our position that the appellant has taken inconsistent positions under oath, under the penalty of perjury, in separate judicial proceedings, in an obvious attempt to conceal the existence of this claim from the bankruptcy court. For the sake of the argument, let's assume we accede to that argument and that there's an element of estoppel in the first part of the analysis has been met, the elements of estoppel, in other words, are present. This case seems to be turning on whether the court then was required to under Seymour and then went on to exercise discretion, considering the second part of the Seymour factors, and demonstrated to some extent that it did consider those factors because they were not recited in an order. So what is your response to that? Where does the record indicate that the judge considered the second part of the Seymour factors in exercising its discretion? Well, I think it's pretty clear from the order that relates to the motion for reconsideration. At the time, the motion for reconsideration, not the motion to dismiss, but the motion for reconsideration was argued, Seymour had been decided. And so I'm not so sure that Judge Mullen delayed the hearing on the motion for reconsideration to allow the Supreme Court to rule in Seymour. I think some other things going on with representations made by the appellant's counsel that the trustee was going to get involved in the case, and that never happened. And when it became clear that the trustee wasn't going to involve herself in the case, and by that time Seymour, the Supreme Court in Seymour, had rendered its ruling, the motion for reconsideration was heard. Okay, so it's subsequent to Seymour, so the argument can certainly be made that the trial judge was well aware of the Supreme Court's decision in Seymour. Well, there's no question because it was discussed at length. And Seymour, as we say, has a two-part analysis, whether the factors are present and, assuming the factors are present, whether or not they should be applied to find estoppel. But here's the intriguing part, and here's the little twist here that I want you to deal with here. The court did say it exercises discretion, which is the magic phrase, of course, in making a decision such as this. But then the court goes on to say to prevent the plaintiff from taking inconsistent positions. The court said that was the reason it was applying it, which was where the court went awry in the first Seymour case. The court held the inconsistent positions in the first Seymour and the appellate level was enough to carry the day. The Supreme Court says no. So what do you make of this language? The whole purpose of doing this was to prevent the plaintiff from taking inconsistent positions. Well, I think, first of all, it's very important to appreciate that what we have here is factually distinguishable from the events in Seymour. So that's number one. And I think the court appreciated the numerous distinctions, factual distinctions between what was happening here, what happened in this case, and what happened in Seymour. But Seymour, the plaintiff in the bankruptcy didn't take inconsistent positions in Seymour 1? Well, there was a determination that inconsistent positions were taken because what the Supreme Court did was agree that there is an affirmative duty to supplement. But then when it went on to the second part of its analysis in discussing what happened in Seymour, the court, although in my reading of the case, the Supreme Court opinion, it doesn't appear as though the Supreme Court is really dealing, it's a truncated opinion, if you will, in that the Supreme Court isn't really dealing with the issue of whether or not there was an intent to deceive. But it does discuss at length the importance of there being that second part of the analysis, an intent to not just deceive, deceive or mislead. I know, but I'm saying in both cases, clearly, the essence of both plaintiffs in this case and the other case took an inconsistent position. It's not a dispute. It's a whole essence of it. That's correct. But now here's where this case diverges from what happened in Seymour. I think it's important maybe to back up a bit and just discuss the vehicle by which we raised the argument of judicial estoppel. It came by way of 2619 motion to dismiss, whereby we were asserting that judicial estoppel was an affirmative matter that defeats the claim. And in support of the motion, we provided material, not affidavits, but material by way of the schedules, bankruptcy schedules, the petition. I believe there was some reference in the petition to the appellant having made payments to the Bankruptcy Council during the pendency of the first Med-Mal case. So before it was refiled, while the case was pending, just before it was up for trial, she had retained Bankruptcy Council. So there's some allusion to that in the schedules. How does that establish deception? Well, it establishes that she was fully aware that there was a case pending, number one. She was in court on the day of trial, on the day that the counsel took the case. Isn't it an inherent truth that if you take inconsistent positions, that one of them is wrong? I agree with you. Unless, of course, we're talking about a Scottish verdict. I agree with you. Are we going to get into that? No, we aren't. But the point is, is that normally the facts of life are, if you take inconsistent positions, one of the positions is wrong. Right, so that brings you to that. Being wrong doesn't mean that you, quote, unquote, are lying or you're being deceitful. What it means is, at minimum, you're mistaken. I agree, and that's why there's a lot of discussion about that second part of the analysis and then the underlying purpose of judicial estoppel and when to use it and when perhaps not to use it. Here again, we get a chance to highlight the factual differences between the Seymour case and what we have here. Not just the Seymour case, but a lot of the cases out there, federal and state, that have argued with the notion that are we applying this in an equitable sort of way? So looking again at the second part of the analysis, was there really an intent to deceive? Is this going to be fair, unfair? Are we going to be doing an injustice to one of the parties? And how do we know? I agree with your analysis so far, but how do we know the court in this case did that? All those things you said, the equitable consideration spirit, we don't know that here because the court said it did it for one purpose, which is merely to prevent inconsistent positions. Well, I think what the court did, though, in that order is it highlighted what the court felt was important to, before you get to, I think it's number seven in the order, I actually have the order here, the court identifies very specifically the facts that it felt was important to rendering a decision that you know what, it would be an injustice if you didn't apply judicial estoppel in this case. And those facts, and they're indistinguishable, I'm sorry, they're indisputable. Nobody's fighting it. Again, going back to the vehicle by which we brought the motion, it was a 2619 reattached supporting material. There were no affidavits by the appellate. There were no affidavits by the bankruptcy trustee. There were no affidavits by the bankruptcy counsel. There's nothing to support the notion that somehow they made a mistake. Instead, what you have, which is indisputable, and it was outlined in that court order, is that the appellant was fully aware that there was a case pending, that she had taken a voluntary non-suit literally weeks before she filed her bankruptcy petition, number one. Number two, she, under oath, she made a declaration, a statement, under oath, under the penalty of perjury. And underneath that, it even identifies very, very clearly, you're subject to a fine if the statement's contained. Nobody's disputing any of that in this case, are they? I mean, she clearly took inconsistent positions. That's beyond dispute. But we're saying that in and of itself doesn't carry today under Seymour, because that's what the appellate court held in the first Seymour case that got reversed. It turned on the inconsistent positions, which is an element, as you well know, of estoppel. If you don't have that, you don't have that element present. So I guess what he's arguing is you've got all these elements. Everybody agrees. But was the second part of the analysis applied in light of the court specifically saying it was doing this to prevent the inconsistent position, which is an element of estoppel to begin with? It's not a second-part consideration, if you will. Do you see the distinction? I do see the distinction. But I think in identifying the very specific facts that the court utilized to render its decision, the court is explaining why we're not just using it. Is it explaining why it's finding estoppel? Or is it explaining why the equitable considerations weigh in favor of applying estoppel? Well, I – it's our position. They're not one and the same. I agree. And it's our position that what the court is doing is explaining why – it's explaining why it's going to exercise its discretion to apply estoppel in this particular case. So it's not dealing with – we have two inconsistent positions. There's no question about that. Okay? But what we have here, unlike any other case that's come back favorable for the appellant, unlike any other case that I could find favorable for the appellant, are statements made under oath with the knowledge of actual knowledge, no question about it, knowledge of the pending claim, under the penalty of perjury, that this claim did not exist, that there was no claim. That is an intent to deceive. That is certainly an intent to mislead the court. And there was nothing proffered by the appellant or by counsel by way of seeking affidavits from bankruptcy counsel, from the trustee to support the notion that somehow this was just a simple, you know what, we made a mistake, this was inadvertent, we're sorry. Oh, but by the way, after counsel files a motion to dismiss, you know what, we'll fix the problem now. Counsel, the statement that the court put of record strikes me as being an anthememe, and that is that one of the premises of this syllogism is that there were inconsistent positions, and that an unstated premise was that inconsistent positions established deceit, and therefore exercising her discretion, the trial judge refused to grant the relief requested. An anthememe is an improper syllogism when it comes to being a valid argument or statement or principle. So how do you respond to the fact that there appears to be, because you agree that inconsistent positions does not necessarily establish deceit, how can you otherwise validate this improper anthememe? Well, let me just ask a question that's related to that, if I could, that may help us understanding this. Did Seymour actually require the trial court in the exercise of its discretion to consider the factor, whether there was an intent to deceive, or was that just a suggestion? That was one of the multiple factors a trial court could consider. It was my reading of the case that it was a, as I said, truncated opinion. That analysis was never- So the premise was left out because it was truncated? Well, I mean, it was never, because the court decided that the trial court never exercised its discretion to begin with, the court felt that in and of itself was an abuse of discretion, and that's really where the analysis sort of ended in terms of deciding the case the way it decided the case. I would go on to discuss the aspect of whether or not in Seymour, looking at what happened in Seymour, so again, we're talking about factually Seymour, you had a situation where the plaintiff had filed a bankruptcy, and then subsequent thereto suffered an injury, and subsequent thereto filed a lawsuit after I think the bankruptcy had been discharged, and there was an argument that was made that the plaintiff has an affirmative duty to supplement the schedules to disclose the existence of the cause of action. And in response to, it was a summary judgment motion, I believe, so not a motion to dismiss, but a summary judgment motion, in response to the summary judgment motion, the plaintiff filed affidavits from the trustee, I believe, as well as counsel. Then why was Seymour discussing deceit? If the breach of an affirmative duty was established, why go into deceit? Why not just say there was an affirmative duty to report, it didn't happen? Goodbye. It didn't do that, did it? The Supreme Court did that because It discussed estoppel, which in the classical original sense was based upon the court of chancery in England, which was based upon the belief that all the equitable principles of fairness, not justice, but fairness, should be applied. And deceit is part and parcel of the concept of what is fair or unfair. And so when you talk about a breach or an affirmative duty in a breach, that sounds very legalistic to me. But when you start talking about deceit, it sounds much more like equitable estoppel as opposed to judicial estoppel. And regardless of the reasons, it would appear that the Supreme Court in Seymour is suggesting that there are factors or aspects of judicial estoppel that in the application thereof, that equitable estoppel, or put another way, equity, should apply. And one of the biggest problems that's been pointed out by my colleagues is the way that the judge laid her decision or her opinion of record, it's not really clear what she did. Well, I think the way she laid out the order, she said it was appropriate to apply judicial estoppel first and foremost. And then she went on to say to prevent the plaintiff from taking inconsistent positions. And then prior in the preceding notations in the order, the court pointed out the very specific facts that the court felt were important. So when we talk about Seymour again and we talk about the Supreme Court decision, the Supreme Court did say there are multiple factors that are applicable in the analysis of whether or not there was an intent to not just deceive but mislead. And the trial court in our case cited those very specific facts that the court felt were important to applying this equitable doctrine and dismissing this case with prejudice. What is the date of the order you're referring to where she's laid all that out? Was it the July order, October order? It's an October order. If it's the October order, okay. I just wanted to know whether you were referring to the July order or the October order. It's a two-page order. Okay. The facts that I'm referring to identified in the order begin at number six. I wrote the order. It's my handwriting. I apologize. It's terrible handwriting. It might be hard to read. And six is the record indicating? The record indicating, correct. Plaintiff's original cause of action was voluntarily non-suited within approximately one month of plaintiff's filing of her bankruptcy petition. And section 4A of the Statement of Financial Affairs made part of the plaintiff's bankruptcy petition discloses statements made by plaintiff under oath that plaintiff had no lawsuits to which she was a party within one year immediately preceding the filing of the bankruptcy case. And then seven, it says? Seven, the court further holds all elements of judicial estoppel are present. And in the exercise of the court's discretion, so we get to the second part of the analysis now, the court finds that it is appropriate to impose estoppel to prevent plaintiff from taking inconsistent positions. So what you have here, and there's no case that Plaintiff's Counsel cited to that have facts like ours, where the court said, you know what? That's a mistake. That's an avertance. That's not right. We're not going to apply this doctrine here because that would be an inequitable, unfair result. What you have here is someone who was on trial, who had already retained bankruptcy counsel, who one, call it one month later, files, strike that, let me back up a bit, on trial, already retains bankruptcy counsel, voluntarily non-suits the case, then one month later files bankruptcy, okay, and then as part of the schedules, the disclosures, and the petition, under oath, under the penalty of perjury says, there are no lawsuits existing within one year immediately preceding the filing of this petition. Wasn't there someone who just recently was exonerated after signing an oath similar to that regarding government secrets? Apparently, it's possible to apparently sign those things under penalty of perjury and not be guilty of deceit. Well, I. Or is that an overstatement? I would just, in terms of what you have in this particular case, given that there's no question that she knew, given that she was in court on trial, and one month later, and already had a bankruptcy lawyer in place, and one month later files a petition whereby she doesn't disclose the existence of this lawsuit to her benefit, to her benefit because her bankruptcy was granted, she had $20,000 in unsecured debt, which is, I think her debt equity ratio is something outrageous because she makes $12,000 a year, okay? But she has $20,000 in unsecured debt, which is discharged. That's a benefit. Without the creditors having knowledge of the existence of this lawsuit, without the creditors being allowed to. Counsel, your time's up. Thank you. Okay. Thank you, Judge. Mr. Coleman? Yeah. As I was pointing out before, I think that very much what ultimately is relevant is what the Supreme Court said in Paragraph 50 because in Paragraph 50, like the paragraph we were discussing from Judge Mullin's order, they discuss the order from the trial court there, and in there, they discuss the fact that the order in judicial establishment is an equitable doctrine invoked by the court at its discretion. That's quoting from the trial court. It does not otherwise appear from this record, as we will elaborate here, that the court exercised discretion in its application of the doctrine, finding rather than the presence of certain facts and merely the disclosure of the non-inconsistency. We know that there was an inconsistency. Everybody knows there's inconsistency. It's been an essential fact from day one, but that doesn't rise to the level of the court having exercised the discretion that the court expects, as it's cited in Paragraph 50, and the fact that here, as in Seymour, the fact that the court cites and says, we know that you're supposed to exercise discretion does not mean it does. What the court was referring was, if not to the deliberate, instead of using the words mislead, this was all in the same order. The court had just pointed out that there was a deliberate misstatement. The court never said that it was deliberate. The court only said that the misstatement was made. There was no indication that it was deliberate. That there was a misstatement made. Correct. There never was an indication or finding. So you're saying Seymour requires a court to decide whether it was deliberate or inadvertent. Is that what you believe Seymour says? The court has to make a finding of whether the actions of the plaintiff were inadvertent or deliberate? Yes. Seymour says that it has to exercise its equitable discretion and not just recite the fact I'm supposed to exercise my equitable discretion. And it then goes on to say, well, it recites it. The record has nothing saying you did it. And that's exactly what Paragraph 50 is all about. That's exactly the same thing we see here. Also, counsel tries to bootstrap something to show intent by the fact that the schedules are under oath. The Supreme Court specifically said under oath is not a significant factor. And that's for an obvious reason. You can make an inadvertent error under oath and you can lie your head off not under oath. The essence is whether or not, one, that the declarant intended to deceive the court, and two, whether or not they obtained a benefit from the deception. And there's no fact here. And the defendant has the burden of proof under both the case law and under the mere fact it's 2619 motion to show an intent to deceive the court, not just that the court had a misstatement made to it, and two, that she obtained a benefit, the benefit being that she got the discharge because of the misstatement. There's no indication that had she disclosed, no fact that if she had disclosed that it would have made any difference if we're getting a discharge three months later, as you said, on a completely unliquidated cause of action, this one wasn't even pending at the time, it's impossible to value. So whether $20,000 worth of creditors would even care to want to make the effort, I'm just looking at footnote nine and I think it's also paragraph 60 of the decision in Seymour. But the fact that they have to consider equitable factors. And one of these that Justice Shostak mentioned in this court, in her dissent, the Supreme Court, just a significant brief follow-up, was whether there'd be windfall to the opposing party. In this case, not only is there windfall to, would be a windfall to Dr. Thimmes if he won, but now that the creditors are back involved and they can talk about the fact that there was a deception or a misstatement, well, the court was deceived, but the ultimate so-called victims of any misstatement that might have occurred would be the creditors. And now that the bankruptcy proceeding has been reopened, if Ms. Oxley gets a recovery, the creditors may stand to benefit. But the court has to do this twice then, the bankruptcy court has to go through the process twice because of this mistake. Well, the defective has to go through the process twice while the bankruptcy court reopened the bankruptcy proceeding. And while the creditors, who I don't think were thinking a lot about it, would stand to benefit going through the process twice. The essential thing in any miscarriage of justice is whether the parties before the court who get victimized, and here it's debatable whether they did in any way, what would certainly happen is there would be a windfall for Dr. Thimmes, not only against the plaintiff, but against these creditors as well. And also another factor is the intent regarding the intent to deceive was the effect on the court and whether there was an effect on the court in the first proceeding. And this is where, again, the burden of proof is upon the movement. Again, I don't think they've shown that there was any effect on the bankruptcy court from this mistake that the court or the creditors suffered from this mistake. But we do know that if this decision is sustained, there will be a windfall to Dr. Thimmes, not only against the plaintiff, but now against her creditors too. And I think that that is, even the re-filing is an equitable factor. Would you close? I'm sorry? Would you like to make a closing statement? That's all I'm saying is I think the equity is that there was a failure to consider the equitable factors involved. There really was no second step. Thank you. Thank you. Thank you. We have a short recess. There's another case on call.